# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANGELA C. WEST | : CIVIL ACTION |
| v. | : |
| SUN TRUST MORTGAGE, SUN TRUST BANK, SUN TRUST AFFILIANTS, SUN TRUST SUBSIDIARIES, FIDELITY TITLE COMPANY, TRACY C. BOGANS, EDWARD KENNER and THOMAS BAKER TITLE SERVICES, P.C. | : : : : : : NO. 18-3778 |

## MEMORANDUM

Savage, J.                                                                                            September 26, 2018

*Pro se* Plaintiff Angela C. West has filed this civil action against Sun Trust [sic] Mortgage, Sun Trust [sic] Bank, Sun Trust [sic] Affiliants [sic], Sun Trust [sic] Subsidiaries, Fidelity Title Company, Tracy C. Bogans, Edward Kenner, Thomas Baker Title Services, P.C., and Common Pleas Judge Guido, raising claims related to property located in Cumberland County, Pennsylvania.[1] She has also filed a Motion for Leave to Proceed *In Forma Pauperis*. (ECF No. 1.) For the following reasons, the Court will grant West leave to proceed *in forma pauperis* and dismiss her Complaint with leave to amend.

## FACTS

In her rambling and somewhat confusing complaint, West alleges the following facts. In 2006, West purchased a house in Cumberland County for $475,000.00.

---

[1] Although Cumberland County is located within the Middle District of Pennsylvania, *see* 28 U.S.C. § 118(b), West asserts that several events related to the property, including the preparation of fraudulent documents, occurred in Bucks County, located within this district, *see id.* § 118(a). At this time, the Court cannot determine whether venue is proper here, or whether West will need to proceed on some or all of her claims in the Middle District.

Compl. at 9.² She alleges that her husband, Tracy Bogans, and Edward Kenner "provided SunTrust with [her] information relating to the property." *Id.* Bogans used her information to sell the home to SunTrust Mortgage without West's "knowledge or written authorization." *Id.* Bogans, Kenner, and SunTrust "enlisted the services of the Thomas Baker Title Services in Bucks County, Pennsylvania and accompanied by his paramour identified as his wife attempted to transfer the property into Defendant Bogans['] name after obtaining the [m]ortgage from SunTrust." *Id.* According to West, Thomas Baker Title Services "was indicted for fraud around 2007 by the Pennsylvania Supreme Court and was no longer authorized to perform title transaction in 2007." *Id.*

Subsequently, Bogans "abandoned the family after removing a large sum[] of money from 'the property' and after Plaintiff West was diagnosed with cancer." *Id.* In 2012, when SunTrust attempted to foreclose on the property, it discovered that Bogans "never had ownership of property in order to obtain a mortgage." *Id.* That same year, SunTrust "joined Plaintiff West as a secondary Defendant with Tracy Bogans to . . . proceedings . . . in Cumberland County Court[] after Defendant Bogans disappeared and failed to pay the mortgage." *Id.* at 9, 11. West "refused to relinquish rights to property that was stolen as a result of misrepresentation and fraud." *Id.* at 11. She claims that SunTrust and Bogans "began conspiring together . . . to take possession of property while West and Bogans were involved in contentious divorce proceedings." *Id.* For example, Bogans apparently gave SunTrust West's Social Security number and birthdate. *Id.* In 2017, SunTrust then accessed West's credit report "and contacted and removed [her] previous lender, then claimed 'SunBank' purchased [her] 20 year old student loan from PHEAA for $78,000 and began demanding and accelerating

---
² The Court uses the pagination assigned to the Complaint by the CM/ECF docketing system.

payments." *Id.* West claims this occurred because she had refused to relinquish the property to Bogans and SunTrust and refused to accept a $78,000.00 settlement. *Id.* She alleges that during proceedings in state court, Judge Guido told her that she should have taken the settlement. *Id.*

West claims that the defendants have "all made it impossible for [her to] financially recover[] from [d]ivorce proceedings and the legal nightmare initiated by Tracy Bogans involving other cases." *Id.* She asserts that Judge Guido "assisted SunTrust during civil proceedings" by allowing Bogans to testify against her, "threatening [her] from the bench," allowing testimony from an "unreliable witness," authorizing SunTrust and its affiliates to access her credit report, forcing her to sit for a deposition even though she was "mental[ly] unfit" to do so, and advising SunTrust to "call in a handwriting expert for trial proceedings." *Id.* at 12-13. She also faults Judge Guido for "issu[ing] an Order giving Defendant Bogans full ownership of property including West's legal rights as a spouse." *Id.* at 13.[3]

West asserts that she has suffered mental duress because she has to "see a[] counsel twice weekly" and also takes medication "to reduce anxiety, depression and symptoms associated with PTSD." *Id.* at 16. She also asserts that she suffers from cancer, autoimmune disease, chronic fatigue syndrome, and sleep deprivation. *Id.* West states that the defendants have also "cut-off various financial resources and made it impossible for [her] to pay taxes, bills and other expenses." (*Id.*) As the basis for this

---

[3] Public dockets reflect that in 2010, SunTrust filed a Praecipe for Lis Pendens in Equity against Bogans and West. *SunTrust Mortgage Inc. v. Bogans*, Docket No. 201-07923 (Cumberland Cty. Common Pleas). In 2011, SunTrust filed a Complaint to Quiet Title. *Id.* Ultimately, on May 22, 2018, Judge Guido issued an Order awarding judgment in mortgage foreclosure to SunTrust against Bogans' interest in the amount of $575,000.00 and against West's interest in the amount of $499,199.00. *Id.* West appealed to the Superior Court of Pennsylvania, and that appeal appears to still be pending. *West-Bogans v. Bogans*, 47 MDM 2018 (Pa. Super. Ct).

Court's jurisdiction, West provides a list of constitutional provisions, criminal laws, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and various federal financial statutes. *Id.* at 5-7. She seeks $4 million. *Id.* at 16.

## STANDARD OF REVIEW

Because it appears that West is incapable of paying the fees to commence this civil action, we will grant West leave to proceed *in forma pauperis*. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires us to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires us to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *Id.* Because West is proceeding *pro se*, the Court construes her allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## DISCUSSION

### *Federal Constitutional Claims*

West appears to assert that the defendants have conspired to violate her rights under various constitutional provisions, including the First, Fourth, Fifth, Six, Seventh, Eighth, Ninth, and Fourteenth Amendments. Compl. at 5. Though the Complaint does not state, we construe the Complaint to be raising claims pursuant to 42 U.S.C. § 1983.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the

alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "[T]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010). "[A] bare assertion of conspiracy will not suffice." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "'A conspiracy cannot be found from allegations of judicial error, ex parte communications (the manner of occurrence and substance of which are not alleged) or adverse rulings absent specific facts demonstrating an agreement to commit the alleged improper actions.'" *Capogrosso v. The Supreme Court of New Jersey*, 588 F.3d 180, 185 (3d Cir. 2009) (per curiam) (quoting *Crabtree v. Muchmore*, 904 F.2d 1475, 1480-81 (10th Cir. 1990)). Rather, a plaintiff must allege in specific "terms the approximate time when the agreement was made, the specific parties to the agreement (i.e., which judges), the period of the conspiracy, or the object of the conspiracy." *Great W. Mining & Mineral Co.*, 615 F.3d at 179.

Here, West's allegations do not support a plausible conspiracy. She bases her claims on general allegations. "Merely . . . being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge." *Dennis v. Sparks*, 449 U.S. 24, 28 (1980). Her conspiracy claims fail.

In any event, West may not proceed on her § 1983 claims against Judge Guido because he is barred by absolute judicial immunity. West has named Judge Guido as a defendant in this case based on the manner in which he presided over proceedings in state court. However, judges are entitled to absolute immunity from civil rights claims that are based on acts or omissions taken in their judicial capacity, so long as they do

not act in the complete absence of all jurisdiction. *See Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978); *Azubuko v. Royal*, 443 F.3d 302, 303-04 (3d Cir. 2006) (per curiam). By her own allegations, West has shown that the judge was acting in his judicial capacity. Therefore, we must dismiss West's claims against Judge Guido as legally baseless.

Given the absence of factual allegations supporting the existence of a conspiracy, there is no basis for concluding that the remaining defendants are state actors subject to liability under § 1983. *See Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) ("[W]e have explained that the principal question at stake [in determining whether a private actor can be considered to have acted under color of state law] is whether there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." (quotations and alteration omitted)); *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 277 (3d Cir. 1999) ("Attorneys performing their traditional functions will not be considered state actors solely on the basis of their position as officers of the court."). Thus, we shall dismiss West's § 1983 claims against the defendants.

### *Claims Pursuant to Criminal Statutes*

West asserts that the defendants violated various criminal statutes. Compl. at 5-6. Criminal statutes generally do not provide a basis for civil liability. *See Cent. Bank of Dover, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190 (1994) ("We have been quite reluctant to infer a private right of action from a criminal prohibition alone[.].") Thus, any claims brought pursuant to criminal statutes will be dismissed.

## RICO Claims

West also vaguely contends that the defendants violated RICO. The federal civil RICO statute provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter[, which prohibits racketeering activity,] may sue therefor in any appropriate United States district court . . . ." 18 U.S.C. § 1964(c). Section 1962 provides, in relevant part:

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . (d) it shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C. § 1962.

To state a civil RICO claim, a plaintiff must plausibly allege the following elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). The RICO statute defines "racketeering activity" by enumerating a list of predicate acts, including mail, wire, and financial institutional fraud. *See* 18 U.S.C. § 1961(1). It appears that West is claiming that the defendants engaged in racketeering activity by preparing fraudulent documents regarding the property. However, "[w]here acts of . . . fraud constitute the alleged predicate racketeering acts, those acts are subject to the heightened pleading requirement of Rule 9(b)" of the Federal Rules of Civil Procedure. *Warden v. McLelland*, 288 F.3d 105, 114 (3d Cir. 2002). Thus, "allegations of [RICO] predicate . . . fraud acts should state the contents of the communications, who was involved, where and when they took place, and explain why they were fraudulent." *Mills v. Polar*

*Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993). A "pattern" of racketeering activity requires at least two predicate acts of such activity. *See* 18 U.S.C. § 1961(5).

Here, West's Complaint fails to adequately plead a pattern of racketeering acts. She only sets forth one instance of fraud, alleging that when Thomas Baker Title Service "prepared the fraudulent paperwork at the request for Tracy Bogans, SunTrust and Edward Kenner and Fidelity Title Company authorized this paperwork." (Compl. at 12.) Her vague and conclusory allegations are insufficient to state a civil RICO claim. *Cf. Jung v. Bank of Am., N.A.*, No. 3:16-CV-00704, 2016 WL 5929273, at *10 (M.D. Pa. Aug. 2, 2016), *Report and Recommendation adopted by* 2016 WL 5928805 (M.D. Pa. Oct. 11, 2016) (allegations that "unspecified Defendants utilized mail as a general means of communication" were insufficient to state a RICO claim). Accordingly, West's RICO claims will also be dismissed.[4]

### Claims Under Various Federal Financial Statutes

West also appears to assert that the defendants violated the Gramm-Leach-Bliley Act, the Privacy Act of 1974, the Dodd-Frank Act, the Fair and Accurate Transactions Act, the Truth in Lending Act, and the Consumer Financial Protection Act. (*See* Compl. at 7.) As an initial matter, the Gramm-Leach-Bliley Act does not provide for a private cause of action. *See Dunmire v. Morgan Stanley DW, Inc.*, 475 F.3d 956, 960 (8th Cir. 2007) (collecting cases). In any event, West's Complaint fails to describe how the defendants violated each of these acts. Accordingly, at this time, the Court cannot discern a plausible claim for relief pursuant to these provisions.

---

[4] Moreover, West's mental and emotional distress are not injuries to "business or property" for purposes of RICO. *Clark v. Conahan*, 737 F. Supp. 2d 239, 255 (M.D. Pa. 2010) (observing that "[m]ental distress, emotional distress, and harmed reputations do not constitute injury to business or property sufficient to confer standing on a RICO plaintiff" and explaining that "injury for RICO purposes requires proof of concrete financial loss, not mere injury to an intangible property interest").

### *State Law Claims*

If West is attempting to assert state law tort claims, the federal court has no jurisdiction over them. There are no federal claims upon which supplemental jurisdiction may rest. Nor is there diversity of citizenship to support subject matter jurisdiction. Under 28 U.S.C. § 1332, a district court can exercise subject-matter jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." *Id.* Section 1332(a) requires complete diversity between all plaintiffs and all defendants. *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)). Here, several of the defendants are residents of Pennsylvania, the same state where West resides. Hence, we shall dismiss all state causes of action that may be inferred from the Complaint. Compl. at 3-4.

In deference to her *pro se* status, we shall grant West leave to file an amended complaint within thirty (30) days of the date of this Memorandum and Order in the event that she can state a plausible claim for relief over which this Court may exercise subject matter jurisdiction. If West fails to file an amended complaint, her case will be dismissed without prejudice for failure to prosecute without further notice.

### **CONCLUSION**

For the foregoing reasons, we shall grant West leave to proceed *in forma pauperis* and dismiss her Complaint without prejudice to her right to file an amended complaint within thirty (30) days in the event that she can cure the defects noted above.